IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| LISA MARIE DOWNS, | : |
| Plaintiff, | : |
| | : Civil No. 1:18-cv-03136-RMB |
| v. | : |
| | : **OPINION** |
| NANCY A. BERRYHILL, | : |
| Acting Commissioner of Social Security, | : |
| Defendant. | : |

**BUMB,** United States District Judge:

This matter comes before the Court upon an appeal by Plaintiff Lisa Marie Downs from a denial of social security disability benefits, seeking judicial review of the final determination of the Commissioner of Social Security denying Plaintiff's application for social security disability. For the reasons set forth below, the Court affirms the decision of the Administrative Law Judge ("ALJ").

**I.  Procedural History**

On September 11, 2015, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act, alleging disability beginning June 1, 2015. The claim was initially denied on November 10, 2015, and again upon reconsideration on February 5, 2016. Plaintiff filed a written request for hearing on February 25, 2016 and testified at an administrative hearing held before Administrative Law Judge Karen Shelton on July 18, 2017. At the hearing, Plaintiff was represented by her attorney, Lynette Siragusa. The ALJ also heard testimony from a vocational expert.

1

On September 1, 2015, the ALJ issued a decision denying Plaintiff's claim for benefits, based upon her finding that Plaintiff maintained, through the relevant time period, "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she requires the opportunity to stand for 5 minutes after half an hour of sitting or sit for 5 minutes after half an hour of standing/walking while remaining on task . . . and can frequently handle and finger. [Record of Proceedings, "R.P.", p. 19]. On January 3, 2018, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final. Plaintiff now seeks Judicial Review by this Court pursuant 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).
>
> In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.
>
> Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume her former occupation, the evaluation moves to the final step.
>
> At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the

claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

### III. FACTUAL BACKGROUND

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff was born in 1967 and was 48 years old at the alleged onset date [R.P., p. 95]. The Plaintiff meets the insured status requirement of the Social Security Act through December 31, 2019. [R.P., p. 17].

Plaintiff has past relevant work experience as a homecare attendant and a warehouse laborer. [R.P., p. 56-63]. However, Plaintiff claims that she is disabled and unable to work due to a myriad of conditions, including but not limited to:

> degenerative joint disease in the lumbar and cervical spine, lumbar facet and cervical facet syndromes, osteoarthritis of bilateral knees, osteoarthritis (osteopenia) in bilateral hands and wrists, foot pain, atherosclerosis of extremities with intermittent claudication; fibromyalgia, sleep disturbance, nontoxic single thyroid nodule, vertigo, impaired hearing in right ear, history of arthritis, joint stiffness, joint swelling, numbness in both hands, headaches, high cholesterol, Vitamin D Deficiency, trouble focusing.

[Dkt. No. 11, at 5].

#### A. Plaintiff's Medical History and Testimony

At the administrative hearing, Plaintiff testified that she first started noticing a pain in her back and numbness in her hands while she was employed as a home health aide in 2014. [R.P., p. 60-61]. Plaintiff stated that she left that position shortly after Dr. Tanamay, M.D. diagnosed her with osteopenia of the hands. Id. Plaintiff stated that Dr. Tanamay administered her an injection in her left hand. Id.

4

Plaintiff stated that she then worked in a freezer storage unit for about a month around August 2014 but could not continue employment because "the pain was so severe that [she] had to leave." [R.P., p. 62]. Plaintiff stated that Dr. Soloway, M.D. administered her injections in her back, which she now receives biannually for temporary pain relief, and has received multiple injections in her neck, knees, and hands. [R.P., p. 64-65, 68]. Plaintiff testified that Dr. Soloway prescribed her physical therapy, which she attended, from what she believed, from around 2014 to 2015 for about six visits. [R.P., p. 69].[1]

On June 5, 2015, Plaintiff began consistent treatment with Dr. Soloway for back, neck, hand, and foot pain. [R.P., p. 370]. Dr. Soloway recommended "further imaging in the cervical spine with bone scan or CT or MRI." Id. The scan was normal and Dr. Soloway recommended pharmacological treatment. [R.P., p. 375-76].

On July 6, 2015, Plaintiff presented Dr. Soloway with lower back pain and x-rays. [R.P., p. 382]. The x-rays showed severe osteoarthritis of the low lumbar spine and spondylotic disease and sclerotic changes to the posterior elements. Id. X-rays of the hands and wrists showed demineralization, x-rays of the feet and ankles were normal, and x-rays of the chest showed a fracture from trauma. Id. A DEXA scan was normal. Id. A physical examination showed pain and tenderness in Plaintiff's lower back and neck, but normal motor, sensory, and deep tendon reflexes. [R.P., p. 383]. Dr. Soloway

---

[1] The hearing transcript seems to suggest that physical therapy did not really help Plaintiff. [R.P., p. 69.] This is supported by the physical therapist's assessment that physical therapy "does [not] seem to help much[, reported] by [Plaintiff]." [R.P., p. 331].

recommended an MRI, a bone scan, EMG/NCS, and injections. Id. Plaintiff refused any and all injections. Id. Dr. Soloway also recommended physical therapy and "emphasized [its] importance." [R.P., p. 385]. The record, however, is clear that Plaintiff "did not arrange for a [physical therapy] evaluation" until, at earliest, August 31, 2015. Id.

On August 20, 2015, Plaintiff presented Dr. Felt, M.D. with complaints of neck pain with radiation down both arms, numbness in her arms and hands, and weakness with her grips. [R.P., p. 319]. An MRI on August 18, 2015 revealed diffuse disc degeneration and a slight disc herniation. Id. Dr. Felt found no abnormalities and recommended left cervical facet blocks and physical therapy. [R.P., p. 320]. Again, the record is clear that despite a second recommendation of physical therapy, Plaintiff did not arrange for a physical therapy evaluation until, at earliest, August 31, 2015. [R.P., p. 385].

On August 31, 2015, Plaintiff presented Dr. Soloway with joint pain. [R.P., p. 385]. A physical examination again showed pain in the lower back and neck, but normal motor, sensory, and deep tendon reflexes. [R.P., p. 386]. Dr. Soloway recommended facet injections, which Plaintiff rejected. Id. This time, Dr. Soloway recommended that Plaintiff attend "extensive" physical therapy. Id.

Despite the fact that two doctors made three recommendations that Plaintiff attend physical therapy as early as July 6, 2015, Plaintiff did not begin physical therapy until September 22, 2015. [R.P., p. 331]. Plaintiff attended nine physical therapy sessions from September 22, 2015 to October 22, 2015, wherein Plaintiff showed minimal progress and discontinued for that reason. [R.P., p. 331].

On October 29, 2015, Plaintiff presented Dr. Bagner, M.D. with generalized pain throughout her muscles and joints, with trouble standing or sitting for long periods of

6

time. [R.P., p. 343]. A physical examination showed that Plaintiff could ambulate at a reasonable pace, that she had some pain in multiple regions, but no motor or sensory abnormalities. [R.P., p. 343-44]. Dr. Bagner diagnosed Plaintiff with a lumbosacral strain, arthralgia, and myalgia. Id.

On November 10, 2015, the state-agency physician, Dr. Pirone, M.D., assessed Plaintiff's Residual Functional Capacity ("RFC"). [R.P., p. 101]. Dr. Pirone assessed that Plaintiff could occasionally lift and/or carry 20 pounds and frequently carry and/or lift 10 pounds. Id. In addition, Dr. Pirone opined that Plaintiff could stand and/or walk and sit for six (6) hours in an eight (8) hour work day. [R.P., p. 101-02]. Dr. Pirone also believed that Plaintiff did not have any manipulative limitations, and could occasionally climb ramps/stairs, bend at the waist, kneel, crouch, and crawl, and could frequently balance, but could never climb ladders/ropes/scaffolds. Id. On February 1, 2016, Dr. Golish, M.D., affirmed the findings of Dr. Pirone. [R.P., p. 125-27].

On December 10, 2015, Plaintiff presented Dr. Soloway with lower back pain. [R.P., p. 388]. A physical examination showed pain in the lower lumbar spine with tenderness and abnormality of gait, but with normal range of motion of the lumbar spine, hips, knees, and ankles and normal motor, sensory, and deeper tendon reflexes. [R.P., p. 389]. Dr. Soloway diagnosed Plaintiff with lumbar osteoarthritis and recommended facet block injections. Id.

On January 21, 2016, Plaintiff returned to Dr. Felt for a repeat study, which she was directed to undergo if her condition did not improve since her August 20, 2015 appointment. [R.P., p. 348]. A physical examination showed Tinel's signs bilaterally and

a decrease in sensation in Plaintiff's fingers. Id. An EMG showed cervical facet syndrome, left greater than right, but no carpel tunnel syndrome. [R.P., p. 349-50].

On September 23, 2016, Plaintiff presented Dr. Soloway with pain in her knees, neck, lower back, hands, and wrists. [R.P., p. 391]. Dr. Soloway recommended fluoroscopically guided injections for Plaintiff's cervical and lumbar spine, along with viscosupplementation, and administered injections into Plaintiff's neck and hip. [R.P., p. 393]. In addition, Dr. Soloway "advised [Plaintiff] on icing. [Physical therapy], lumbar and knee support [was] ordered." Id. The record, however, does not contain any evidence that Plaintiff attended physical therapy after October 22, 2015.

On October 10, 2016, Plaintiff presented Dr. Soloway with pain in her knees and hands. [R.P., p. 375]. Dr. Soloway performed a DEXA scan, which revealed osteopenia in Plaintiff's neck. Id. Dr. Soloway recommended Calcium Carbonate, Vitamin D, weight bearing exercise, pharmacological therapy, and a repeat scan after a year or two. [R.P., p. 376].

On October 19, 2016, Plaintiff presented Dr. Soloway with lower back pain with radiation down her legs. [R.P., p. 397]. A physical examination and x-rays revealed facet arthropathy. [R.P., p. 398]. Dr. Soloway administered Plaintiff facet injections and recommended Plaintiff to continue physical therapy. Id. Again, there is no evidence in the record that Plaintiff attended physical therapy after October 22, 2015.

On November 2, 2016, Plaintiff presented Dr. Soloway with pain in her neck, which was limited in range of motion. [R.P., p. 400]. Dr. Soloway administered Plaintiff facet injections in her back. [R.P., p. 401]. Despite the fact that Dr. Soloway again

recommended the continuance of physical therapy, there is no evidence that Plaintiff returned to physical therapy.

On November 30, 2016, Plaintiff presented Dr. Bejaran, M.D. with back pain. [R.P., p. 432]. Dr. Berjaran diagnosed Plaintiff with neck pain, shortness of breath, and lower back pain. [R.P., p. 435].

On March 28, 2017, Plaintiff presented Dr. Soloway with knee, foot, ankle, and wrist pain. [R.P., p. 420]. A physical examination revealed osteoarthritis of the bilateral knees, inflammatory arthritis, and osteopenia. [R.P., 422]. Dr. Soloway recommended knee braces, viscosupplementation, and Vitamin D. Id.

On May 23, 2017, Plaintiff presented Dr. Berjaran with upper and lower back pain and bank stiffness. [R.P., p. 431]. Plaintiff requested a "form completed for disability" because her rheumatologist "refused to do her forms." Id. No form completed by Dr. Berjaran appears in the record.

On June 7, 2017, Plaintiff presented Dr. Soloway with chronic, severe atraumatic, non-radiating bilateral knee pain. [R.P., p. 459]. In addition, Plaintiff claimed she had difficulty ambulating and experienced pain when standing for more than 20 minutes. Id. A physical examination showed antalgic gait, bony enlargement, pain and tenderness of the knees, small effusions bilaterally, medial joint line tenderness bilaterally, but no acute distress or anserine bursa tenderness. [R.P., p. 460]. Dr. Soloway recommended weight loss, continuance of home exercise, use of a cane, walker, or knee brace, and administered knee injections. Id. In addition, Dr. Soloway and Plaintiff discussed the use of physical therapy, but, again, no evidence in the record suggests that Plaintiff attended physical therapy after October 22, 2015.

## IV. ALJ's Determination

The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the relevant time period. Upon consideration of the evidence of record and Plaintiff's testimony at the hearing, the ALJ determined that Plaintiff had an RFC to perform work in the national economy. [R.P., p. 23].

At Step One of the sequential analysis the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of June 1, 2015. [R.P., p. 18]. At Step Two, the ALJ determined that Plaintiff's severe impairments were "degenerative disc disease of the lumbar and cervical spines and osteoarthritis. Id. The ALJ concluded that Plaintiff's alleged anxiety and depression were not severe because the duration and frequency of the conditions were not supported in the medical record. Id.

At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Id.

At Step Four, the ALJ determined that Plaintiff had the RFC to perform:

> Light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she requires the opportunity to stand for 5 minutes after half an hour of sitting or sit for 5 minutes after half an hour of standing/walking while remaining on task; can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds; can frequently balance and occasionally stoop, kneel, crouch or crawl; and frequently handle and finger.

[R.P., p. 19]. "Light work" is defined by the Social Security Administration to "involve[] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR §§ 404.1567(b), 416.967(b). The ALJ formulated ostensibly the same RFC's articulated by Drs. Pirone and Golish.

The ALJ did, however, corroborate other medical evidence with the opinions of Drs. Pirone and Golish, ranging from MRIs to medical opinions from several physicians regarding Plaintiff's physical condition. [R.P., 22]. Because the opinions of Drs. Pirone and Golish were consistent with all medical evidence, the ALJ afforded "great weight" to the opinions of Drs. Pirone and Golish, who "opined that Plaintiff is capable of light duty with postural limitations." [R.P., p. 22].

In addition, the ALJ relied on the vocational expert's testimony that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." [R.P., p. 23]. The vocational expert determined that Plaintiff was able to work several different jobs in the national economy, including: reservations agent, currency counter, guard house, finish inspector, perimutuel clerk, and check room attendant. Id. The ALJ determined that the vocational expert's testimony was consistent with the evidence of record and information contained in the Dictionary Occupational Title. Id.

### V. Analysis

On appeal, Plaintiff argues that the ALJ erred by not affording appropriate weight to five specific sources of medical records: the opinions of three treating physicians, Drs. Soloway, Felt, and Bejaran, a physical therapy assessment, and an x-ray. [Dkt. No. 11, p. 19]. Plaintiff asserts the opinions of Drs. Soloway, Felt, and Bejaran should have been afforded "controlling weight" because they physicians evaluated, examined, and treated Plaintiff, becoming her "treating sources." Id. at 20-24. In addition, Plaintiff asserts that the ALJ did not properly weigh the physical therapy notes from Plaintiff's sessions and the x-ray report from September 23, 2016. Id. at 25-27.

11

Plaintiff further asserts that the ALJ erred by not explaining the reasons for rejecting all five sources of medical evidence. Id. at 22 (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) ("An explanation from the ALJ of the reasons why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.")).

In response, the Commissioner argues that the ALJ afforded appropriate weight to the five sources of medical evidence because they are merely "treatment records" and do not carry the same probative value as "medical opinions".[2] [Dkt. No. 12, p. 10]. In addition, the Commissioner argues that the ALJ's determination was appropriate even though the ALJ did not refer to every piece of evidence in the record because she was not required to. Id. at 12 (citing Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203-04 (3d Cir. 2008)).

Having reviewed the record, it is apparent that the ALJ afforded appropriate weight to the substantial evidence warranting an unfavorable decision for Plaintiff. The ALJ considered evidence from several physicians regarding Plaintiff's physical condition, including that of Drs. Soloway and Felt.[3] [R.P., p. 20-21]. Specifically, the ALJ recited the findings of Dr. Soloway

---

[2] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s) . . . and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

[3] The fact that the ALJ did not refer these three physicians by name, standing alone, does not render the analysis of the evidence insufficient. See Klein v. Colvin, No. 13-1497, 2014 U.S. Dist. LEXIS 76944, at *24 (W.D. Pa. June 6, 2014) (finding that the omission of a physician's name does not make the ALJ's discussion inadequate.); Boyd v. Colvin, No. 15-1047, 2016 U.S. Dist. LEXIS 90103, at *7 n. 4 (W.D. Pa. July 12, 2016) (opining that the ALJ was not required to refer to each medical professional by name.).

from June 5, 2015, September 23, 2016, March 28, 2017, and June 7, 2017. [R.P., p. 20-21]. The ALJ's discussion included findings of Plaintiff's hand, wrist elbow, shoulder, knee, feet, and ankle pain, a description of x-rays, a recommendation that Plaintiff attend physical therapy, and the use of injections. Id.

In addition, the ALJ recited the findings of Dr. Felt from August 20, 2015 and January 21, 2016. Id. The ALJ's discussion included mention of MRIs findings of neck pain with radiation into her arms bilaterally, NCV and EMG testing, and a recommendation of physical therapy. Id. The ALJ also referenced the fact that Plaintiff had attended physical therapy and showed minimal progress. [R.P., p. 22].

While the ALJ failed to reference the September 23, 2016 x-ray and the findings of Dr. Berjaran, "there is no requirement that the ALJ discuss in its opinion every tidbit of evidence." Hur v. Barnhart, 94 Fed. App'x 130, 133 (3d Cir. 2004). The ALJ is not required to explain why she has omitted non-probative evidence or evidence consistent with the record and determination. See Crawford v. Astrue, No. 08-1160, 2009 U.S. Dist. LEXIS 32446, at *29-30 (E.D. Pa. Apr. 15, 2009) (citing Walker v. Comm'r of Soc. Sec., 61 Fed. App'x 787, 788-89 (3d Cir. 2003)). In this case, the x-ray from September 2016 and the findings by Dr. Berjaran revealed neck, back, knee, and hand pain, which were consistent with the record and the ALJ's determination that Plaintiff was experiencing symptoms but could nevertheless work. [R.P., p. 22]. Thus, the ALJ was not required to discuss Dr. Berjaran's findings or the x-ray from September 2016 and, therefore, did not err by failing to reference them.

Plaintiff's argument, that the ALJ should have afforded more weight to five specific medical records because they are medical opinions, is unpersuasive. Even if Plaintiff is correct that these records are medical opinions and should have been afforded more weight, they merely

enumerate Plaintiff's conditions and recommended treatments, not Plaintiff's physical limitations or RFC. See, e.g., [R.P., p. 314-18, 337-41, 375, 380-81]. In fact, the only records that establish Plaintiff's physical limitations or RFC are the opinions of Drs. Pirone and Golish. [R.P., p. 101-03]. Moreover, the opinions of Drs. Pirone and Golish are, as the ALJ stated, "consistent with the evidence of record, which shows diagnostic evidence for [Plaintiff's] complaints, but only minimal and conservative treatment for the same." [R.P., p. 22]. Therefore, the ALJ afforded appropriate weight to the medical evidence at issue.

Plaintiff's second argument, that the ALJ erred by not explaining the reasons for rejecting the five sources of evidence, is also unpersuasive because each document was consistent with the record and the ALJ's determination. See Walker, at 788-89. Therefore, the ALJ did not err by failing to explain her reasons for rejecting such evidence.

In sum, the ALJ afforded appropriate weight to each individual piece of evidence. As such, this Court finds that the ALJ's determination was based upon substantial evidence.

## VI. Conclusion

For the reasons set forth above, the ALJ's determination that Plaintiff is not disabled under the Social Security Act is affirmed. An appropriate order shall issue on this date.

Dated: May 30, 2019                              ___s/ Renée Marie Bumb_____
                                                                              RENÉE MARIE BUMB
                                                                              UNITED STATES DISTRICT COURT